DANIEL C. MCALLISTER *vs.* ADELAIDE V. MCALLISTER.

Opinion filed April 21st, 1898.

**Evidence Sustains Findings.**

> Evidence in this case *held*, on examination, to support the findings of the trial court.

**Divorce—Evidence—Extreme Cruelty.**

> In a case where a husband brings action for divorce against his wife on the ground of extreme cruelty and such cruelty consists in false charges of marital infidelity, made by the wife against the husband, although such charges have destroyed the domestic happiness of the parties, and caused the plaintiff mental suffering, yet, if facts and circumstances for which the husband was largely directly responsible were such as to give the wife grave reason for believing that the charges made by her were true, no divorce should be granted the husband solely on the ground that such charges were made.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Daniel C. McAllister against Adelaide V. McAllister, for divorce upon the grounds of extreme cruelty. Defendant had judgment and plaintiff appeals.

Affirmed.

*W. P. Miller,* for appellant.

Extreme cruelty is the infliction by one party of grievous mental suffering upon the other. Section 2739, Rev. Codes; *Barnes* v. *Barnes,* 95 Cal. 71, overruling *Waldron* v. *Waldron,* 85 Cal. 251; *Smith* v. *Smith,* 48 Pac. Rep. 730; 1 Bish. M. D. & S. § 1550; *Robinson* v. *Robinson,* 15 L. R. A. 121; *Marks* v. *Marks,* 56 N. W. Rep. 65; *Carpenter* v. *Carpenter,* 2 Pac. Rep. 122; *Gibbs* v. *Gibbs,* 18 Kan. 419; *Goodman* v. *Goodman,* 26 Mich. 417; *Bennet* v. *Bennet,* 24 Mich. 482; *Palmer* v. *Palmer,* 7 N. W. Rep. 760; *Whetmore* v. *Whetmore,* 13 N. W. Rep. 800; *Caruthers* v. *Caruthers,* 13 Ia. 266; *Wheeler* v. *Wheeler,* 53 Ia. 511; *Powelson* v. *Powelson,* 22 Cal. 358; *Smith* v. *Smith,* 8 Oreg. 100; *Kennedy* v. *Kennedy,* 73 N. Y. 369; *Black* v. *Black,* 30 N. J. Eq. 215; *Beyer* v. *Beyer,* 50 Wis. 254; *May* v. *May,* 62 Pa. St. 206. Appellants acts of indiscretion are not sufficient to justify respondents accusations of adultery or to deprive such accusations of the element of malice. *Williams* v. *Williams,* 2 S. W. Rep. 823; *Eggerth* v. *Eggerth,* 16 Pac. Rep. 650; *Wagner* v. *Wagner,* 36 Minn. 239; *Powelson* v. *Powelson,* 22 Cal. 358; *Sylvis* v. *Sylvis,* 17 Pac. Rep. 912. A single charge of adultery is sufficient to constitute extreme cruelty. *Jones* v. *Jones,* 60 Texas, 457; *Bahn* v. *Bahn,* 62 Texas, 518; *Whetmore* v. *Whetmore,* 13 N. W. Rep. 800; *Rosenfield* v. *Rosenfield,* 49 Pac. Rep.

49. Mental anguish and wounded feelings constantly agravated by repeated insults and neglect are as bad as actual bruises to the person and that which produces the one is not more cruel than that which causes the other. *Glass* v. *Wynn*, 76 Ga. 319; *Kelly* v. *Kelly*, 18 Nev. 49, 1 Pac. Rep. 194; *Gholston* v. *Gholston*, 31 Ga. 625; *Kempf.* v. *Kempf.*, 34 Mo. 211; *Small* v. *Small*, 57 Ind. 568.

*Wm. J. Clapp*, for respondent.

The cruelty contemplated by the law must operate upon the husband or wife while living in the relation of husband and wife. *Beach* v. *Beach*, 46 Pac. Rep. 514. The charges made by respondent against her husband were either true, or if any, were not true, she believed them to be true when made and had good grounds for so believing. Her accusations under such circumstances do not amount to cruelty. *Jones* v. *Jones*, 41 S. W. Rep. 413; 1 Bish. M. D. & S. § 1544; *Ashton* v. *Grucker*, 20 So. Rep. 738.

BARTHOLOMEW, J. The plaintiff and appellant brought an action in the District Court of Cass County for the purpose of securing an absolute divorce from his wife, the defendant and respondent. The action was commenced in 1895, and was based upon allegations of extreme cruelty, as defined by section 2561, Comp. Laws. The answer in its material effect, denied that defendant had been guilty of any extreme cruelty towards plaintiff, and pleaded certain facts by way of excuse for certain admitted conduct on the part of the defendant. A trial resulted in a denial of the divorce, and plaintiff brings the case to this court for trial *de novo.* There is no question of law raised in the case. The controversy is purely one of fact, and the facts must be culled from about 300 printed pages of testimony. The members of this court have given this testimony full and critical examination, and we reach conclusions which affirm the judgment of the trial court. No detailed analysis of the testimony could serve any good purpose, but a few general statements may be due to the parties, and serviceable in similar cases arising hereafter.

It has never been claimed in this case that defendant inflicted upon plaintiff any "grievous bodily injury." His whole complaint in his testimony is for "grievous mental suffering." This is sufficient under the statute cited, but we think it should clearly appear in the testimony. The mental suffering of which complaint is made arose in part from the fact (and we think it is a fact) that defendant stated to their children (grown to years of understanding) and to relatives of the plaintiff, and to a gentleman who did business in the same rooms with plaintiff in Chicago, and perhaps to others, that plaintiff was unduly intimate with other women. It is due plaintiff to say that this charge is without sufficient support in the testimony. There is nothing in the record to justify the conclusion that any such fact ever existed. But it is clear to us that the charge, as thus made to outside parties, could not reasonably have been the cause of any grievous mental suffering to plaintiff. If he did not know it, he could not suffer from it, and in the instances where he did know it the parties had such confidence in plaintiff that they did not credit it. Hence it brought no reproach on him, and could cause him no great suffering.

It is urged, however, that his mental sufferings were more particularly caused from the fact that for some years before the parties separated (which was in December, 1894,) and certainly at all times after they removed to Chicago (which was in 1889,) defendant constantly charged plaintiff to his face with such intimacy, and continuously upbraided him therefor, and by reason of her jealous and implacable disposition in this behalf she destroyed their domestic happiness, reduced plaintiff to desperation, and caused him to seriously contemplate suicide as a relief. Defendant denies making these charges as broadly or frequently as claimed. But, considering the testimony of both parties, and their son and daughter, aged respectfully 23 years and 20 years when they testified, we are convinced that the broad charge was sometimes made, and that the domestic life of plaintiff and defendant was at times very unpleasant. A brief review

of some of the facts in their marital life will fix the responsibility for this condition.   They were married in Michigan, in 1871. They were only fairly out of the nursery at the time, he being 17 and she 16 years of age.   Three children were born to them during the first four years of their marriage.   The husband, at the time of the marriage, had some local reputation as a singer.   A very few months after the marriage the young wife objected to her husband singing so much with certain young ladies.   If we agree with plaintiff that this was a manifestation of jealousy on her part, yet we could hardly call it exceptional, or, if we did, we must also say that the husband was thus early apprised of its existence, and it became his duty ever afterwards to avoid, by all reasonable means, exciting this jealously in her disposition. In the early years of their marital life the husband supported his family by manual labor and teaching singing schools.   This latter kept him much from home, especially at night.   While the young wife, without a servant, lived alone with her babes, the husband was away, engaged in congenial employment, surrounded with company, and especially with ladies.   If, occasionally, the wife felt lonely and neglected and irritable, it was only natural. Later the husband devoted his entire time to music; gave lessons, organized and conducted choirs, rendered cantatas, etc.   All this took him away from his family, and constantly brought him in contact with ladies.   The wife objected at various times and in various ways.   Once she peremptorily objected to his singing certain parts in a cantata with a certain lady, and he was obliged to forego them.   He regarded these objections as unwarranted, and caused by unreasonable jealously.   The consequence was that his affecttions were withdrawn from his wife.   Outwardly, he maintained affectionate attentions, but perfunctory attentions could not deceive an intelligent woman.   The fact that her husband's affections were being withdrawn only gave her added ground for jealously and distrust.   But their domestic life was fairly successful until they moved to Chicago.   There plaintiff established a studio, where he gave private lessons in vocal

music. Of course, his pupils were principally ladies. He was also a member of a professional quartette, which usually had engagements two or three nights in the week, and he conducted a large choir in a fashionable church. It was his custom to be absent from home all day, and from 10 until 2 o'clock at night, Sundays included. The latter hour was by no means infrequent. The testimony shows him to be a professed Christian, and strictly temperate man; and, while there is nothing to show that he was improperly employed during these late hours, neither is there anything to suggest any necessity for his absence from home and his wife at all such times. Moreover, he testified that he did not escape the feminine admiration usually bestowed upon public singers and actors. He testifies that he has often received letters from women. One his wife discovered and read. Its contents were exceedingly suggestive, if not incriminating. Again, his wife found certain entries that he had made in his diary, and while they were, perhaps, only the foolish gushings of a supersensitive nature, yet to a wife inclined to be jealous it would be impossible to explain them on any theory of perfect innocence. Further, among the women with whom he was thrown in contact in a professional way were some with whose reputations rumor had trifled, and another of whom he spoke in terms which led his wife to believe that his interest in her was more than professional. His wife objected to his association with these parties. He protested his unwillingness to change conditions, and refused to change. The record shows that on several occasions his conduct was such as he must have known would severely test his wife's belief in his fidelity as a husband. From all these facts we conclude that, while defendant charged marital infelicity against plaintiff that did no exist, and while such charges tended to destroy the domestic happiness of these parties, and may have caused plaintiff mental suffering, yet facts and circumstances for which plaintiff was to a large extent directly responsible so far justified the defendant in making such charges that it does not now lie in plaintiff's mouth to accuse her of extreme cruelty for so doing.

Affirmed. All concur.