(113 N. W. 605.)

---

ALFRED MOSHER v. EUGENIA MOSHER.

Opinion filed Sept. 9, 1907.

**Divorce — Cruelty — Mental Characteristics.**

1. The habitual use of profane language, and the telling of obscene stories by the wife to the husband and to third parties, in his presence and against his wishes, furnishes a ground for divorce, where it appears that the mental and other characteristics of the husband are such that this course of conduct on the part of the wife causes him humiliation and grievous mental suffering.

**Same — Mental Suffering.**

2. A continuous course of fault-finding, threats, and other acts, intended to aggravate and annoy the other party to a marriage, though each act is trifling in itself, may cause such a degree of mental suffering as to constitute a ground for divorce on the charge of extreme cruelty.

**Same — Statements of One Spouse Provoked by Conduct of the Other Not Grounds for Divorce.**

3. The rule of McAllister v. McAllister, 7 N. D. 324, 75 N. W. 256, that where one party to a marriage has by her conduct caused the other party to make statements based upon such conduct, which, if not so caused, might be ground for divorce, is adhered to; and *held* that such statements when so caused do not constitute a ground for divorce.

**Same — Condonation Revoked Revives Original Cause.**

4. Condonation is revoked and the original cause for divorce revived by the guilty party resuming the former course of ill-treatment.

**Appeal — Trial De Novo.**

5. The Supreme Court has the power, under section 7229, Rev. Codes 1905, to determine all the issues between the parties involved in an action appealed under said section.

**Divorce — Allowance of Alimony by Supreme Court.**

6. The Supreme Court has jurisdiction to consider applications for temporary alimony, counsel fees and suit money, after the district court has lost jurisdiction; but such applications will not

be considered as a matter of course, and should be made in the district court whenever there is reasonable opportunity to present them · intelligently to the court before appeal.

Action by Alfred Mosher against Eugenia Mosher. Judgment for plaintiff, and defendant appeals.

Affirmed.

*J. F. Callahan* and *M. A. Hildreth,* for appellant.

It is a sufficient answer to a petition for a divorce that petitioner was regardless of his conjugal duties. Skinner v. Skinner, 5 Wis. 449; Poor v. Poor, 8 N. H. 308; Best v. Best, 1st Adams, 410; Holden v. Holden, 1st Hagg. R. 453; Wood v. Wood, 2 Paige, 108; Bishop on Marriage and Divorce, Chap. 20 and 22; Bedell v. Bedell, 1st J. C. R. 604; Watkins v. Watkins, 2 Ark. 96; Waldron v. Waldron, 9 L. R. A. 489, 4 Barb. 320; Johnson   v. Johnson, 4 Wis. 154, 4 Johnson Chc. 187; 2 Md. Chc. 341; Bishop on Marriage and Divorce, 454 and 459; 15 Ill. 186.

*Chas. E. Stowers* and *Engerud, Holt & Frame,* for respondents.

Much weight will be given the views of the trial court, in a case of this kind. Mahnken v. Mahnken, 9 N. D. 188, 82 N. W. 870; Fleming v. Fleming, 30 Pac. 566.

Passive endurance or conjugal kindness are not evidence of condonation, unaccompanied by express agreement to condone. Taylor v. Taylor, 5 N. D. 58, 63 N. W. 893; Rev. Codes 1905, section 4060.

SPALDING, J.   Action by Alfred   Mosher   against   Eugenia Mosher for divorce, on the ground of extreme cruelty, consisting in intentionally worrying and annoying the plaintiff, and pursuing a systematic course of ill treatment, using profane language, and telling obscene stories, and other acts, all of which are alleged to have caused the plaintiff grievous mental suffering. The defendant denies these charges, and asks affirmative relief, charging the plaintiff with failing to provide her with the necessaries of life, and with repeatedly accusing her of having married him from mercenary motives, and of her having loved other men, and of her having illicit intercourse with other men. The answer also sets out that the plaintiff is the owner of property to the amount of $24,000, and asks for suit money and permanent alimony in the

sum of $5,000. The plaintiff replied, denying the charges of the defendant, and also that he is the owner of property of the value of $24,000, and alleges that he is worth a very much smaller sum, and that his property is incumbered in the amount of $3,600.

The trial court granted a decree to the plaintiff, and we think it was justified in doing so. It appears that plaintiff was a widower, with married children living within a few miles of his home at Erie, a very small village in Cass county. He is 71 years of age, and the defendant is about 46 years of age. The plaintiff is a farmer apparently accustomed to living economically, but it does not appear that he was parsimonious to any greater extent than thrifty, saving farmers usually are. His residence was very comfortably furnished, and he appears to have provided the necessaries of life, and the defendant's claim that he did not do so arises from his failure to obtain items for household consumption which she requested him to procure on different occasions, on some of which his failure was by reason of inability to procure them at Erie, where they resided. On one or two occasions when she requested certain articles to be procured, he suggested that she might be able to use something else as a substitute. The defendant is a nurse by profession, and married the plaintiff about two months after their first meeting, she having been the one to solicit an introduction, and having been twice before married. Testimony is introduced showing that before promising to marry the plaintiff she desired to know what provision he would make for her in a financial way, and that she told different people that she had worked long enough, and wanted a home, and was willing to marry any one to secure it, and preferred an old man to a young man, and that she most certainly would not have married him if he had had no money. One of the witnesses testified that she told her that she preferred to marry an old man, because she would probably get the property sooner, and that after marriage she contemplated separation, and procuing a settlement of the property in her favor. After separation came by her leaving him, she had her attorney write immediately to the plaintiff, soliciting an arrangement for a division of the property. From the evidence on this branch of the case, it appears that her desire to acquire property was an important factor in the marriage. They lived together some time over one year, during which time she repeatedly threatened to leave him, and the evidence indicates that she was planning to

cause the plaintiff, by her aggravating conduct, to so far forget himself as to turn her out of doors, thereby laying the ground for an action of divorce in her own favor.

The plaintiff was a religious man, had been a church member for 35 years, and did not tolerate profanity or vulgarity in his family. One of the principal charges against the defendant was that she was very profane in her conversation in the presence of the plaintiff, and sometimes of third parties, and that she repeatedly told in his presence, and in the presence of his children, obscene stories, some of which are related by witnesses, and it is charged that these were the cause of grievous mental suffering on the part of the plaintiff, and the trial court so found. We cannot assume that the finding of the trial court is erroneous in the absence of evidence to the contrary. Whether the telling of obscene stories and the use of profanity by the wife in the presence of the husband and others is the cause of grievous mental suffering on the part of the husband depends very largely upon the temperament, religious training, and characteristics of the man, and his degree of sensitiveness to such improprieties. We can imagine a man whose moral nature may be so inactive as to render such conduct on the part of the wife inoffensive, but we think a great majority of men would be humiliated and chagrined by such conduct, which would cause in most cases more grievous mental suffering than other acts more violent in their nature. The evidence on this subject, taken as a whole, we think clearly indicates that it had the effect on the plaintiff which might be expected in a man of ordinary sensibilities and of a high standard of propriety. No general rule can be laid down on this subject, but each case where charges of this nature are made must be governed by its own peculiar facts.

Many other acts are shown to have been committed by the defendant, some of them trifling, and the most of them so, but occurring as they did, at short intervals, in the way they did, they constitute a continuous course of conduct intended to aggravate and annoy the plaintiff. We shall not enter into details regarding these acts, as to do so would serve no purpose, and it is sufficient to say that, taken together, we are of the opinion that they warwanted the judgment of the trial court. There is no issue of the marriage. The plaintiff, so far as the records disclose, was patient and considerate to a high degree. The fault-findings, threaten-

ings, and complaints of the defendant seldom brought any retort from him.

The defendant claims that the charges made against her by the plaintiff entitle her to a decree. To this we cannot agree. The allegations of the answer state these much stronger than the evidence supports. Whatever the plaintiff may have said, seeming to reflect upon the defendant in this respect, was occasioned by her own conduct. There is no evidence in the case establishing that she was guilty of unfaithfulness, but there is evidence of indiscretion, and a kind of brazen delight on her part in doing and saying things, not only wanting in propriety, but highly improper, and we are of the opinion that the record contains enough such evidence to bring this case within the rule established by this court in McAllister v. McAllister, 7 N. D. 324, 75 N. W. 256, to the effect that, her own conduct being the cause of any statement or insinuation on the part of the plaintiff reflecting upon her, such statements, even if made by the husband, do not constitute a ground for divorce. It is further contended by the defendant that the record shows condonation by the plaintiff. Some time prior to the final separation they met at the residence of a relative in Wheatland, and each party stated his or her version of their troubles in the presence of others, and, after spending some hours in their consideration, they were advised to start anew, and it is claimed that this constituted condonation. Section 4061, Rev. Codes 1905, reads: "Condonation is revoked and the original cause of divorce revived: (1) When the condonee commits acts constituting a like or other cause for divorce; or, (2) when the condonee is guilty of great conjugal unkindness, not amounting to cause of divorce, but sufficiently habitual to show that the conditions of condonation had not been accepted in good faith or not fulfilled." If there was at this time a condonation, and it is not clear that there was, the record shows that almost immediately the defendant resumed her former course of conduct towards the plaintiff, and thereby revoked the condonation, and revived the original cause for divorce. Taylor v. Taylor, 5 N. D. 58, 63 N. W. 893.

The printed evidence in this case occupies over 300 pages. Considerable of it is immaterial, and of a frivolous character, which would not be offered in any case except one involving a family quarrel. It would serve no purpose to set it out in this opinion.

It cannot be expected that either party will be absolutely spotless. The day is past when the court holds to any such doctrine. It is beyond the possibilities of human nature that the husband shall never give way to or express his indignation, when the wife nags, threatens and pesters him daily during their married life, and takes delight in calling his attention to foolish and indiscreet acts of her own, which she knew would, and evidently intended should, arouse suspicion and jealousy on his part. The plaintiff may be subject to censure in some particulars, but we think it is shown that, considering the record made by the defendant, he conducted himself with a high degree of circumspection and exhibited great self-restraint.

One other point requires consideration. April 11, 1905, the district court entered an order requiring the plaintiff to pay the defendant $75 suit money, $100 attorney's fees, and $25 per month temporary alimony, during the pendency of this action. On June 26, 1906, a further order was entered requiring the plaintiff to pay defendant for printing abstract and brief $175 and for clerk's fees $12.50, and an additional $150 for counsel fees. The original judgment was entered August 31, 1905, and the appeal taken the 30th day of August, 1906, and on the 26th day of March, 1907, application was made to the district court for a further allowance to defendant in the sum of $500 counsel fees, $5 for surety bond on appeal, and $80.25 costs for printing abstract and brief. On the hearing the counsel moved to dismiss the application upon the grounds and for the reason that the district court had lost jurisdiction of the case by its having been appealed to the Supreme Court. The learned judge of the district court before whom the application was heard took the same view of the law as taken by the counsel for the plaintiff, and denied the application, and in his order denying it stated that, in the former order, he had intended to make the allowance sufficient to pay the cost of printing the abstract and brief of the defendant and the incidental expenses, but that the expenditure had been greater than was anticipated by the sum of $90.25; that, if he had known the exact amount needed, he would have made the order cover this additional sum, and that he would have done so upon application had he deemed it within the power of the district court to do so. Before the argument of the appeal in this court, the defendant appeared and submitted an application for an allowance in the sum of $90.25

for printing and other sums for counsel fees. On such application, the plaintiff appeared by his attorney, and contended that the Supreme Court had no jurisdiction in the premises, but that the matter was solely within the jurisdiction of the district court. This court might rest the matter by holding that the plaintiff having succeeded in convincing the district court that its jurisdiction was lost, and that the Supreme Court alone had jurisdiction of such application after appeal, he would not be heard to deny the power of this court to grant such an order; and ample authority might be cited to support this doctrine, but, as this question has not been passed upon by this court, we have decided to consider it very briefly on its merits, and construe the law applicable thereto. Section 4071, Rev. Codes 1905, provides that, while an action for divorce is pending, the court may in its discretion make allowance, etc. This action is appealed under section 7229, Rev. Codes 1905, and is an action wherein the Supreme Court has power, and it is made its duty, to finally determine the issues between the parties by trying the case de novo on the same evidence submitted to the district court. Appellate courts are held to have jurisdiction to make such allowance on either one of two grounds. Many states construe the word "court," as used in section 4071, Rev. Codes 1905, as referring to the court in which the action is pending at the time the application is made, and that, when the appeal is perfected, all proceedings in the lower court are stayed, and that the appellate court now has complete jurisdiction over the parties. It is unnecessary for us to determine this question, because we are agreed that this court has the inherent power at all times after appeal to allow the wife from the estate of the husband the means necessary to enable her to prosecute or defend the action. The power is incident to divorce cases. The statute on this subject is confirmatory of the common law.

This is supported by a long array of authorities, of which we cite only a few. Nelson, in his work on Divorce, says: "Where the practice is not controlled by the statute, the ordinary rules of practice, as well as the plain principles of law, would suggest that the jurisdiction of the lower court is lost when the appeal is perfected. When the appeal is perfected, all proceedings in the lower court are stayed, and the application must be made to the appellate court which now has complete jurisdiction over the parties. * * * The appellate court has the inherent power to allow alimony

and counsel fees, although not authorized by any statutory provision on this subject; for the jurisdiction to review decrees of divorce carries with it by implication the incidental power to make such allowances. * * * It must be conceded that the appellate court retains at all times its inherent power to compel the husband to furnish the wife means to prosecute or defend the appeal, and that such court cannot be deprived of such power without express prohibition." Nelson on Divorce, section 863. Lake v. Lake, 17 Nev. 230, 30 Pac. 878; Pleyte v. Pleyte, 15 Colo. 125, 25 Pac. 25; Van Voorhis v. Van Voorhis, 90 Mich. 276, 51 N. W. 281; Disborough v. Disborough, 51 N. J. Eq. 306, 28 Atl. 3; Pollock v. Pollock, 7 S. D. 331, 64 N. W. 165; Grant v. Grant, 5 S. D. 17, 57 N. W. 1130; Freind v. Freind, 65 Wis. 412, 27 N. W. 34; Chaffee v. Chaffee, 14 Mich. 463; Drake v. Drake (S. D.) 110 N. W. 270; Phillips v. Phillips, 27 Wis. 252; Goldsmith v. Goldsmith, 6 Mich. 285.

We cannot agree with the respondent's contention that this allowance should not be made, because the appellant has been able to effect her appeal without it. He contends that such allowance should only be made to enable her to procure services or printing when she would otherwise be unable to do so. Some courts do adhere to this strict rule, but our Code provides that this allowance may be made in the discretion of the court to enable the wife to prosecute or defend the action. The construction which limits this literally to the question of her ultimate ability to prosecute or defend is extremely technical. She may have friends able or willing to provide the funds, or some printer may have confidence enough in her case to take his chances on future payment, and give her credit in the necessary amount. The printing may be done for the attorneys representing her, and the fact that she may be able on the strength or one or all of these considerations to procure the necessary printing to get her side of the case before the court in no way relieves the husband of his obligation to provide these necessaries for the wife. This seems to us to be an especially strong requirement when the husband is the plaintiff. He brings his wife into court either with or without cause, and then denies to her the necessary funds with which to establish her innocence or maintain her good name. He owns the property, and she has neither property nor money. The fact that she may have credit to a limited extent should not work to her disadvantage in

making the proper presentation of her version of the family difficulties. We do not mean to intimate that she should be upheld in incurring credit beyond the bare necessities of the case, but the courts will protect the husband against abuse of this privilege. The correct rule, as we think, is that she should be placed upon an equality in this respect with her husband. In view of the statement made in the order of the district court, we think the defendant should be allowed the sum of $90.25 for additional expense of printing, and we allow the same. This action must not, however, be taken to indicate that this court will take jurisdiction of such applications as a matter of course. Whenever there is a reasonable opportunity to intelligently present them to the district court before an appeal is perfected, they should be heard in that court. We do not allow the application of defendant for additional attorney fees. The allowance already made is fairly liberal, and the record shows that it was partially made for the purpose of enabling the defendant to perfect her appeal. The value of the legal services could be determined at the time the various applications were acted upon by the district court. No new facts or necessities appear to have arisen requiring an increase of such allowance. While the appellant had the whole record, which was quite voluminous, printed, the legal questions involved were simple and required comparatively little research. In view of these facts, we do not feel justified in allowing any additional sum for this purpose.

The judgment of the district court is affirmed. All concur.