263 P.2d 705

CONLEY et al.

v.

AMALGAMATED SUGAR CO.

No. 7926.

Supreme Court of Idaho.

Nov. 24, 1953.

Donart & Donart, Weiser, Meek & Miller, Caldwell, for respondents.

Earl E. Reed, Nampa, Ray, Quinney & Nebeker and T. K. Swan, Salt Lake City, Utah, for appellant.

GIVENS, Justice.

Indian Creek, a natural stream of fluctuating, seasonal flow, augmented by drainage and waste waters from various sources, extends generally northwesterly through Nampa, thence to and through Caldwell. In Caldwell respondents own and operate a grocery in a building owned by them, built partly over Indian Creek.

Appellant owns and operates a sugar beet factory about ¾ of a mile north of Indian Creek, west of Nampa and six or seven miles east of Caldwell.

July 25, 1951 respondents sued appellant, alleging water and other liquids carrying particles of beet pulp and other by-products of sugar beets flowed from its factory into Indian Creek, thence down the stream to respondents' place of business, causing the store to be permeated with a strong odor of beet pulp, so nauseating and offensive to the sense of smell as to constitute a nuisance and drive customers out of and away from the store from October 1950 to around May 1, 1951, about the time appellant's plant was in operation; asking for $30,000 damages to the building and $30,000 damages to their business, and also for a perpetual injunction restraining and enjoining appellant from so polluting the waters of Indian Creek and permitting them, carrying such offensive odors, to flow from its plant to respondents' store.

The answer admitted the location of the respective businesses, alleging Indian Creek was a natural drainage for the area where the factory and other places of business and properties adjacent thereto were located, and while Indian Creek may at certain times have been odoriferous, it was not caused by any negligence on the part of appellant, but by refuse from slaughter houses, a fish farm, numerous feed lots, and sewage disposal, and that appellant has at all times used all reasonable means to minimize the flow of its waste into the Creek.

A supplemental complaint filed March 10, 1952 with the court's permission, alleged a continuation of pollution of the stream by appellant and consequent odors in respondents' store between December, 1951 and January, 1952, 'causing continuing additional damage,' not specifying the amount thereof in money.

Appellant argues, since it does not specify the amount of money as damages for the asserted continued conditions in 1951–52, the damages for 1950–51 must have been sufficient to justify the award. Appellant did not challenge the supplemental complaint by demurrer or otherwise; the only reference thereto in connection with its filing was that it was deemed denied.

While it might have been better to specify the amount, Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264, it is not a fatal defect, if any, because judgment aids the pleadings, which then must be liberally construed to sustain the judgment. The Mode, Ltd., v.

Myers, 30 Idaho 159, 164 P. 91; Pendrey v. Brennan, 31 Idaho 54, 169 P. 174; Medling v. Seawell, 35 Idaho 333, 207 P. 137; Marshall-Wells Co. v. Kramlich, 46 Idaho 355, 267 P. 611.

The amount of damage was to be determined on all the evidence, which covered both periods. The judgment certainly would bar further recovery for the period 1951–52. Marshall v. Underwood, 38 Idaho 464, 221 P. 1105.

The court's findings, Nos. V, VI, VII, covered both periods and while they did not separate or specify the amount of loss in each season, i. e., 1950–51, 1951–52, since the total award was not more than that asked, $30,000, there can be no question of the decree being for more than asked in the complaint. Appellant has not been prejudiced, but is protected by this decree being res adjudicata as to the season of 1951–52, while respondents could have, perhaps, asked for more than the $30,000 sought in the original complaint. They should not now, after decree, be penalized because, in effect, they claimed only $30,000 for both periods. In the long run, that is all it amounts to as a practical proposition and there is no inconsistency therein. If the amount had been for more than $30,000, there might have been some point to appellant's contention, but as it is, there is none—either technically as to pleading for the reasons above given, or in substance, because the evidence in the whole record supports the decree as found by the court covering both periods of injury to respondents' business, the total of the amount decreed being no more than asked and based on more asserted loss than the amount awarded in the decree.

Trial was had to the court without a jury March 10, 1952, resulting in these essential findings of fact: between September 27, 1950 and February 20, 1951, liquids carrying particles of beet pulp and other by-products of sugar beets emptied from appellant's plant into Indian Creek, causing such an offensive stench in respondents' store as to materially reduce and damage their business; that such conditions again continued between December, 1951 and January, 1952.

The court, on these findings, awarded damages for injury to respondents' business of $5,932; and that appellant be permanently and perpetually enjoined from permitting beet pulp drainage water and beet pulp to discharge into Indian Creek in sufficient quantities to cause the waters of the Creek to contain the odor of beet pulp at respondents' property.

The appeal herein is from only the portion of the decree awarding damages. No question connected with the injunction or injury to respondents' building is, therefore, before us.

Appellant's assignments of error challenge only the sufficiency of the evidence to sustain the findings.

Respondents relied solely upon the odor of beet pulp as constituting the nuisance and causing damage to their business. There was no other sugar beet factory emptying refuse and liquids into the stream.

There was substantial, direct and specific evidence by respondents and some eighteen witnesses, including customers of the store, other merchants having places of business nearby, and disinterested citizens and residents of Caldwell, that the odor of beet pulp to a nauseating degree was in respondents' store during the operation of appellant's plant and the periods charged. Respondents' evidence also portrayed the persistency of the infiltrated odor in the store, difficulty of eradication and futile efforts to dispel it therefrom.

The evidence shows it was common and general talk the beet pulp odor was in the store—certainly harmful advertising as to a grocery store and meat market. For example: witness Mac Winkelblack, previously a butcher in the Parrish Meat Market which went out of business, was employed by respondents beginning September 1951 and urged his previous customers to trade at respondents' place of business; that many of them, specifically 25, came there to buy meat and when they detected the odors in the store, left and did not return.

Witness Fenrich, a member of the City Council and owner of a place of business near Indian Creek, testified directly that the odor of beet pulp was noticeable along Indian Creek from three days after the beet factory opened until three weeks after it closed; that it was definitely beet pulp which caused the water in the Creek to be a milky color and carry the odor and that he noticed it in respondents' store.

Appellant countered respondents' evidence with expert and lay testimony and documentary evidence that no odor of beet pulp persisted or could persist down the stream from where the waste products of appellant's plant entered into Indian Creek, as far as respondents' store, and if odors emanated from the Creek, they were from other sources entirely disconnected from appellant's business. Also, that the amount of offensive effluent from appellant's plant was so small in proportion to the regular flow of the Creek, sometimes one to 200 cubic feet per second, it was so diluted that all offending odors therefrom were dissipated before reaching respondents' place of business. All this evidence merely created a conflict, resolved by the trial court against appellant.

Appellant urges that competition and incompetent and inefficient management by respondents and their employees were responsible for their deficits. The only change in competition shown was that the unit of Albertson's grocery chain moved from directly across the street from respondents' store to another location about one block away and a unit of the C. C. Anderson's dry goods chain moved into the property vacated by Albertson's.

Respondents furnished free delivery of purchases and granted credit, which the chain grocery stores did not. Mrs. Conley testified the credit business was better because credit customers did not shop around; also their loss from granted credit was very small. There was thus nothing more than the fact there were other privately owned and chain grocery stores in Caldwell at all times in competition with respondents, but nothing to pinpoint or direct their losses, for the period for which they sued herein, were caused or attributable to competition.

Appellant argues that respondents having ten managers within ten years proves they were inefficient. There was no evidence they were incompetent or were discharged for inefficiency. In view of the record, the trial court could reasonably have considered, as he evidently did, that this turnover was of slight, if any, significance.

■ It was for the trial court to weigh and find from these various factors, and the evidence was amply sufficient to sustain the court's finding in this particular, i. e., that respondents' loss in the amount awarded was due to the odor of beet pulp and not competition or incompetent management and met the test as laid down relative to appellant's contentions.

"Appellant's underlying contention is that the record affords no basis other than surmise or conjecture for the court's determination of the amount of damage caused by the dustfall as distinguished from that attributable to the weather. We are not able to agree. * * *

"Decision in the cognate case of California Orange Co. v. Riverside Portland Cement Co., 50 Cal.App. 522, 195 P. 694, 697, turned upon a like comdefendant that during the period of the parison.[2] It was there shown by the operation of its cement plant the plaintiff's orange grove was subject to nattural causes of injury, such as killing frosts and high northerly winds. The court said that if it is impossible to distinguish between the damage arising from injury attributable to the defendant and damage which has another origin, the trier of the facts should be left to make from the evidence the best possible estimate. The court pointed to evidence showing 'that plaintiff's grove, though not subject to any greater damage from the elements than other groves situated outside the zone of falling cement dust, did not produce as did the groves similarly situated outside the dust zone.' The showing was thought sufficient to support the award of damages against the defendant. For a similar holding see International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R. A.,N.S., 415." Permanente Metals Corp. v. Pista, 9 Cir., 154 F.2d 568, at page 570.

"2. That case was cited with approval by the Supreme Court in Slater v. Pacific American Oil Co., 1931, 212 Cal. 648, 300 P. 31."

" 'It many times happens that the damage arising from an actionable injury, chargeable to the defendant, is, in the nature of things or from the circumstances of the case, indistinguishable from other damage occurring at the same time, attributable to the acts of an independent tort-feasor or to natural causes. In such cases, since the injured party cannot supply the materials necessary to enable the jury to make an exact computation of the damages in suit, the approved practice is to leave it (to) the good sense of the jury, as reasonable men, to form from the evidence the best estimate that can be made under the circumstances, as a basis of compensatory damages for the actionable injury." California Orange Co. v. Riverside Portland Cement Co., 50 Cal.App. 522, 195 P. 694, 697;

Hill v. Chappel Bros., 93 Mont. 92, 18. P. 2d 1106; Finnegan v. Royal Realty Co., Cal., 204 P.2d 661, at page 678; Guttinger v. Calaveras Cement Co., 105 Cal.App.2d 382, 233 P.2d 914, at page 917; Griffith v. Kerrigan, 109 Cal.App.2d 637, 241 P.2d 296, at page 298; United Verde Copper Co. v. Jordan, 9 Cir., 14 F.2d 299, 301.

Lastly, appellant urged the evidence is insufficient to justify the amount of damages found. Respondents produced their books and analyses of their purchases, sales and expenses, showing profits for previous years; loss of profits, decrease of business and deficits in 1950–51; without contradiction, that in 1949 respondents made a profit of $4,496.00; that in 1950 they suffered a net loss of $2,595.00 and in 1951 a net loss of $10,410.00.

■ The mere fact that it is difficult to arrive at the exact amount of damages where it is shown damages resulted, does not mean that damages may not be awarded and it is for the trier of facts to fix the amount. DeWiner v. Nelson, 54 Idaho 560, 33 P.2d 356; Owen v. Taylor, 62 Idaho 408, at page 415, 114 P.2d 258; Johnson Oil Refining Co. of Illinois v. Elledge, 175 Okl. 496, 53 P.2d 543.

" * * * Where the right of recovery exists, the defendant cannot escape liability because the damages are difficult of exact ascertainment. The nature of the inquiry in the instant case is such that it is difficult, if not impossible, to ascertain with mathematical certainty the amount of the defendant in error's damages, but this difficulty affords no answer to a cause of action which results from a breach of duty imposed by law. The unliquidated damages growing out of the commission of a tort are seldom susceptible of exact measurement. The rule is, that while the law will not per-

mit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence which the subject will admit is receivable, and this evidence is often nothing better than the opinions of persons well informed upon the subject under investigation. Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N.E. 308. Some of the evidence adduced by the defendant in error to establish the items claimed was merely speculative and conjectural and should not have been admitted. There was, however, sufficient competent evidence concerning these items to warrant the submission of the cause to the jury." Johnston v. City of Galva, 316 Ill. 598, 147 N.E. 453, at page 455, 38 A.L.R. 1384.

Difficulty of ascertainment is not to be confused with right of recovery. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L. Ed. 544, at page 550. Right of recovery depends upon the existence of the nuisance and its effect upon respondents' business; the ascertainment of damages depends upon the extent of the injury.

■ After the court has found, the criteria are not what other or different findings the evidence could or would sustain, not what findings are plausible, not the weight or quality of the evidence or credibility of witnesses, but the sole criterion is simply whether there is substantial evidence, regardless of conflict, to sustain the findings as made, with all reasonable inferences and intendments in favor thereof. This proposition is so universal, so oft repeated and adhered to as to need no citation of authority in support thereof. It is not what evidence tends to support appellant, or negative that favorable to respondents, but it is what evidence tends to support respondents, with all reasonable inferences and intendments to be drawn in favor of respondents, which controls the determination of the controversy in this Court.

■ It is almost axiomatic that the time and place to win the factual features of a law suit is in the trial tribunal, not in the appellate court.

■ There thus being substantial evidence supporting the three essential elements: first, existence of a nuisance, second, damage thereby to respondents' business, and third, extent of money damage to respondents' business, to sustain the findings and decree, the same must be and is affirmed. Costs awarded to respondents.

PORTER, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.