443 P.2d 463

**Louise FISCHER, Plaintiff-Appellant,**

v.

**Bernard W. C. FISCHER, Defendant-Respondent.**

**No. 10053.**

Supreme Court of Idaho.

July 1, 1968.

William J. Dee, Grangeville, for appellant.

W. C. MacGregor, Jr., Grangeville, for appellee.

SPEAR, Justice.

Appellant filed suit against her husband asking for a divorce on the grounds of extreme cruelty. The parties were married in June, 1947, and six children have been born as the issue of this marriage. At the time this action was commenced in May, 1966, the children's ages ranged from sixteen years to five years.

Appellant couched her complaint in the usual allegations of extreme cruelty on the part of respondent resulting in the infliction upon her of grievous mental suffering and bodily injury. More specifically appellant alleged a cruel and abusive course of conduct by respondent which has become progressively worse during the course of the marriage thereby deteriorating any legitimate objects of the marriage. She claimed the use of vile language and obscene name-calling, temper tantrums, abusive threats and actual physical abuse by the respondent-husband. Additionally she alleged that respondent had treated her like a chattel, refusing her money even for her ordinary clothing and other usual expenses.

All of this, appellant alleged, has caused her great mental anguish and has impaired her health.

It will be noted that appellant did not specifically pray for separate maintenance in her complaint—only that the bonds of matrimony be dissolved—but this was raised during the course of the trial and after the divorce was denied and on appeal it is her contention that the evidence was more than sufficient to justify the granting of a decree of separate maintenance. She also prayed that she be given sole and exclusive custody of all the minor children, that respondent be required to pay necessary support and maintenance for each child, and that she be awarded the entire community property.

Respondent made no cross-complaint, but filed only an answer denying cruelty on his part to appellant and alleging he did not believe he had treated her cruelly or inhumanly and denied he had inflicted upon her grievous mental suffering or bodily injury. He further alleged he was very much in love with his wife, that he was very fond of his children and loved them deeply; that while he had spoken to appellant in a loud and angry voice, he had never threatened her with violence nor struck her; that he had worked hard and long to provide a home for his wife and family; that such efforts on his part may have made him short tempered and difficult to get along with, but on the other hand the necessity of caring for six small children had been trying and aggravating to appellant-wife, making her nervous and upset; that the difficulties of the parties in this regard were no different nor more serious than those of most married couples who have been married in excess of twenty years, who were existing upon a limited income and who had to struggle to provide for themselves and their children; that the children dearly love him (their father), and that it would be against their best interests to have them live separate and apart from either their mother or father. He further alleged that he deeply loved his wife, that he did not feel she had an adequate cause for divorce, and that he felt the parties could reconcile their differences, live together with their children in a normal, happy married state, and prayed the court to deny and dismiss appellant's divorce action.

Trial of this cause was held on the 28th day of September, 1966, but on the trial court's own motion and order it was re-opened for additional evidence taken on December 16, 1966; and subsequently thereto the trial court found that appellant had failed to sustain her allegations of cruelty by a preponderance of the evidence and that she had also failed to prove sufficient grounds for a separate maintenance decree. The court additionally found that on some occasions over many years past the respondent upon returning home, while tired or aggravated after working hard on his regular job as a mail carrier for the Postal Department in Grangeville, or after completing his night work at the grocery store, did use profanity in the presence of appellant and the children; and that respondent, after many years of marriage, tended to take appellant for granted and that up until the spring of 1966 appellant accepted these occasional epithets as part of her marriage to respondent. The court then concluded that these acts did not amount to extreme cruelty, but if so, appellant's cause was not brought within a reasonable time after commencement of the use of such language toward her by respondent and so had to be denied under I.C. § 32–611(4).

As is usual in contested divorce actions, the evidence, except as to the date of marriage, the length of residence in the State of Idaho, the names and ages of the minor children of the parties, and the community property of the parties, is highly conflicting and contradictory. To set forth the evidence adduced by, and on behalf of, appellant, concerning the alleged misconduct on the part of respondent which caused appellant grievous mental suffering and bodily injury, and the contradictory evidence adduced by, and on behalf of, respondent,

particularly that concerning the alleged provocation on the part of appellant, would serve no useful purpose other than to provide interesting reading material for anyone who might in the future have occasion to peruse this opinion. On the other hand, it could well prove most embarrassing to either or both of the parties of this action, and certainly to their children, in the future.

We therefore decline the opportunity to specifically detail this evidence. Suffice it to state that the evidence, when taken as a whole, is more than ample to sustain and support the findings of fact of the trial court. The time-honored principle to be applied in these circumstances is that a determination of the issue of whether or not a respondent's conduct constituted extreme cruelty is a question primarily within the fact-finding function of the trial court; and such findings, if supported by substantial, competent, though conflicting, evidence, will not be disturbed by this court on appeal. Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967); Clayton v. Clayton, 81 Idaho 416, 345 P.2d 719 (1959); De Cloedt v. De Cloedt, 24 Idaho 277, 133 P. 664 (1913).

In another assignment of error appellant contends the trial court erred in finding that appellant had not brought her action within a reasonable time after the commencement of the use of vile language toward her. It is unnecessary for us to discuss or rule upon this particular assignment, because of the preceding portion of this opinion. Where a judgment of the trial court is based upon alternate grounds, if the judgment can be affirmed on one of the grounds the fact that the alternative ground may have been in error is of no consequence and may be disregarded. To state this principle in another manner, this court must uphold the finding and judgment of the trial court if it is capable of being upheld on any theory. Berry v. Koehler, 86 Idaho 225, 384 P.2d 484 (1963). See Cassia Creek Reservoir Co. v. Harper, 91 Idaho 488, 426 P.2d 209 (1967).

One other assignment of error by appellant requires attention. She contends the trial court erred when it denied the divorce but failed to award her separate maintenance. It must first be noted that appellant did not allege any cause of action for separate maintenance, nor did she pray for a decree of separate maintenance in her complaint. Additionally, the trial court found upon competent, and substantial, though conflicting, evidence that she had failed in her burden of proof of any grounds entitling her to a decree of separate maintenance. Such finding will not be set aside by this court on appeal. Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966).

However, in the argument contained in appellant's brief, and also in the oral argument presented by her counsel at the hearing on the appeal, it is stated that the parties have failed to reconcile during the two-year interim between the judgment of the court and the hearing on appeal, and therefore this court is urged, on the basis of that alleged fact, to enter a decree of separate maintenance. On any appeal, this court is prohibited from basing its decision on any facts or circumstances not before the trial judge at the time of his decision and not contained in the record of the cause before this court. Whether or not these parties have or have not reconciled during the interim period is not of record, was not presented to the trial court, and cannot be relied upon by this court in determining the issues on this appeal. As this court stated in Steinour v. Oakley State Bank, 45 Idaho 472, 262 P. 1052 (1928):

"* * * The cause comes to us on the record made; and, to determine the correctness or incorrectness of the trial court's decree, we can consider nothing but what was before the court at the time. * * *" (at p. 483, 262 P. at p. 1056).

This principle is followed in Eldridge v. Payette-Boise W. U. Ass'n, 50 Idaho 347, 296 P. 1022 (1931). As stated in my dis-

senting opinion in Reed v. Green, 90 Idaho 526 at 536, 414 P.2d 445 (1966):

> "Another principle long adhered to by this court is that the trial judge is the arbiter of conflicting evidence, and his determination of the weight, credibility, inference and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record. [citations omitted]
>
> "These principles are most aptly expressed by Justice Givens in speaking for a unanimous court in Conley v. Amalgamated Sugar Co., 74 Idaho 416, 263 P.2d 705, wherein he stated:
>
> " 'After the court has found, the criteria are not what other or different findings the evidence could or would sustain, not what findings are plausible, not the weight or quality of the evidence or credibility of witnesses, but the sole criterion is simply whether there is substantial evidence, regardless of conflict, to sustain the findings as made, with all reasonable inferences and intendments in favor thereof. This proposition is so universal, so oft repeated and adhered to as to need no citation of authority in support thereof. It is not what evidence tends to support appellant, or negative that favorable to respondents, but it is what evidence tends to support respondents, with all reasonable inferences and intendments to be drawn in favor of respondents, which controls the determination of the controversy in this Court.
>
> " 'It is almost axiomatic that the time and place to win the factual features of a law suit is in the trial tribunal, not in the appellate court.' (found at page 424, 263 P.2d at page 709)"

It is entirely possible that had some member of this court sat as the presiding judge in the trial of the cause he might have found appellant entitled to a divorce or a separate maintenance decree, but the principle just enunciated precludes the substitution of our judgment for that of the trial judge so long as such judgment is supported by substantial competent evidence. It was for him to determine whether or not the appellant was so refined and genteel that the epithets used by respondent over a period of 20 years did, in fact, constitute extreme mental cruelty to appellant. The trial judge's determination that respondent's misconduct did not so constitute can not be set aside by this tribunal.

Perhaps under the facts and circumstances *now existing*, appellant may have a valid cause of action for separate maintenance, but this issue must first be tried before the proper trial court rather than raised for adjudication on the appeal of this cause.

Judgment affirmed.

McFADDEN, J., concurs.

TAYLOR, J., with whom SMITH, C. J., and McQUADE, J., concur, dissenting in part:

After the filing of the wife's complaint for divorce, a temporary restraining order was issued by the court restraining the defendant from going upon the home premises occupied by the plaintiff and minor children, and from interfering with or molesting them.

In the prayer of her complaint, in addition to the divorce, custody of the children and an award of support for the children, plaintiff prayed:

> "That the plaintiff be awarded all of the community property of the plaintiff and defendant and that defendant be required to complete the payments on the residence so that plaintiff may have a home for the children."

The community property consisted principally of the home which was subject to an incumbrance of $3,000. After trial the court found:

> "The plaintiff failed to sustain the burden of proving by a preponderance of the evidence her allegations of cruelty on the part of the defendant or sufficient grounds for separate maintenance; on some occasions over many years past, the defendant upon returning home, while tired or aggravated after working

hard on his regular job as a mail carrier for the Postal Department in Grangeville, or after completing his night work at the grocery store, did use profanity in the presence of the plaintiff and the children and on some occasions called her a 'stupid moron,' and on others a 'horses ass,'; defendant also, after many years of marriage tended to take the plaintiff for granted and neglected to tell her he loved her, but it is apparent that plaintiff, up until the spring of 1966, accepted these occasional epithets as a part of marriage to the defendant; that the same do not constitute mental cruelty to the plaintiff, but if so, the plaintiff has not brought this action within a reasonable time after the commencement of the use of such language toward her by the defendant and her cause of action, if any she had, is, and must be denied under Subdivision 4 of Section 32–611 Idaho Code."

■ Judgment was entered denying a divorce, vacating the temporary restraining order, and providing that defendant husband, "as head of the household and family, is hereby restored to the occupancy of the family home." It is our long established rule that findings supported by evidence will not be disturbed on appeal. However, we do not agree with the grounds upon which that conclusion was based, and for that reason we cannot concur in the denial of separate maintenance. The plaintiff testified that through the years of the marriage defendant had habitually addressed vile and profane language toward her, which conduct on his part increased in frequency and intensity as the years went by. She testified that he repeatedly called her "a horse's ass," "stupid moron," "god-damn liar," "bastard," and "immoral slut." (The latter epithet was addressed to her only once.) Defendant admitted the use of the first three epithets; said nothing about the fourth; and denied the fifth. She further testified that along about March, 1966, and prior to the filing of her complaint on May

4, 1966, defendant had in a scuffle knocked her to the bathroom floor and kicked her with his boot, and on another occasion had seized her by the throat, threatening to choke her; had dragged her to the bedroom and had thrown her upon the bed with such force and violence that she bounced or rolled off to the floor on the other side; that she had left his bed and bedroom at that time and thereafter slept on the davenport in another room; that in the course of this altercation she attempted to telephone the police; that defendant wrested the phone from her twice and threatened to jerk the "god-damn wires out" if she persisted.

Defendant testified, as to the bathroom incident, that plaintiff slapped him, he grabbed her wrists, she slumped to the bathroom floor and that he did not kick her. As to the bedroom incident, he testified that he took hold of her arms in an attempt to restrain her from leaving the bedroom; that he did not push her or throw her onto the bed, but that she fell over the corner of the bed.

As to the result or effect of defendant's conduct plaintiff testified that she had contemplated a divorce some years earlier; that defendant promised he would try to do better; that his use of the epithet "god-damn liar" was so frequent around the home that the children had begun to call each other liars; that she had become frightened and fearful of the defendant. In response to a question put to her by the trial judge she testified that defendant's conduct finally triggered the divorce action. "I told him [defendant] I just couldn't go on any more," and "I told him that I had been walked on long enough," and "I got so I hated to see him come home, and that's a terrible thing and you think, well its time to go hide." "I felt like I was being abused all the time. I couldn't enjoy life."

She was directly asked about the possibility of reconciliation and testified that she did not think it possible, and when asked to explain why, she said that on oc-

casions he had been mean and abusive toward the children and that the children were beginning to respond by the same kind of conduct, and that defendant was the type to hold a grudge, and that she having filed an action for divorce, "We could never be entirely compatible again."

We do not recite the conduct of defendant toward plaintiff for the purpose of finding error in the court's denial of the divorce, but for the purpose of showing that plaintiff did establish sufficient grounds for separate maintenance. It is clear from the record that the trial judge minimized plaintiff's testimony and accepted the explanations given by defendant, and also his testimony that he loved his wife and family and wanted to continue the marital relationship. It is also clear that it was the purpose of the trial judge in his findings and judgment to effect a reconciliation between the parties in the interest of the family relationship and the children of the marriage.

Reconciliation would be the best solution of the problems presented to the court in this case. The parties are the parents of six children ranging in age from 5 to 16 years at the time the action was commenced. Defendant's income from his employment at the post office and his janitorial work two nights a week in a local food store provides little more than the bare necessities for the family, and defendant has accumulated considerable indebtedness in addition to the incumbrance on the home. If a divorce had been granted the trial court would have been confronted with the problem of dividing the family and arranging for the support of two households out of income scarcely sufficient for one. However, as the trial judge remarked during the course of the trial, the law could not compel the plaintiff to live with the defendant as his wife if she refused to do so; and yet that is the effect of the judgment entered. Plaintiff must receive defendant back into the home and live there with him in order to obtain food and clothing for her children and food for herself. (Her own clothing has been provided by gifts from friends and relatives and the remodeling of her high-school clothing.) To support such a judgment, the court must find not only that a divorce is not justified, but that reconciliation probably can be effected. In any event, the reasoning upon which the trial court based its conclusions cannot be supported.

 Applicable propositions long recognized by this court are: (1) The court in denying a divorce may nevertheless award separate maintenance where the parties cannot live together. Parsons v. Parsons, 72 Idaho 455, 243 P.2d 973 (1952); Hiltbrand v. Hiltbrand, 68 Idaho 275, 193 P.2d 391 (1948); Sauvageau v. Sauvageau, 59 Idaho 190, 81 P.2d 731 (1938); Radermacher v. Radermacher, 59 Idaho 716, 87 P.2d 461 (1938).

(2) "In an action for divorce on the ground of mental cruelty, the particular acts of cruelty complained of are not of themselves the determining factor, but the question of whether the alleged acts of cruelty caused grievous mental suffering on the part of the innocent party is the determining question." Parsons v. Parsons, 72 Idaho 455, at 456, 243 P.2d 973 (1952).

Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967); Veach v. Veach, 87 Idaho 237, 392 P.2d 425 (1964); Hiltbrand v. Hiltbrand, supra; Beckstead v. Beckstead, 50 Idaho 556, 299 P. 339 (1931); Donaldson v. Donaldson, 31 Idaho 180, 170 P. 94 (1917). (3) Repetition of an act of cruelty, which has been condoned, nullifies the condonation and restores the condoned act as a ground for divorce. Chresst v. Chresst, 77 Idaho 486, 295 P.2d 704 (1956); Arestizabal v. Arestizabal, 67 Idaho 492, 186 P.2d 218 (1947); Olson v. Olson, 47 Idaho 374, 276 P. 34 (1929); and (4) a course of offensive conduct by one spouse toward the other, extending over a period of years and resulting in grievous mental suffering to the innocent party, will constitute grounds for a divorce, although the isolated acts, separately and individually consid-

ered, may be regarded as trivial. Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967); Veach v. Veach, 87 Idaho 237, 392 P.2d 425 (1964); Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962); Beckstead v. Beckstead, 50 Idaho 556, 299 P. 339 (1931); Donaldson v. Donaldson, 31 Idaho 180, 170 P. 94 (1917). In the Donaldson case this court quoted with approval from Mosher v. Mosher, 16 N.D. 269, 113 N.W. 99, 12 L.R.A.,N.S., 820, 125 Am.St.Rep. 654, as follows:

> "'A continuous course of fault-finding, threats, and other acts, intended to aggravate and annoy the other party to a marriage, though each act is trifling in itself, may cause such a degree of mental suffering as to constitute a ground for divorce on the charge of extreme cruelty.'" 31 Idaho at 184, 170 P. at 95.

■ In Hiltbrand v. Hiltbrand, supra, this court quoted from Sauvageau v. Sauvageau, supra, as follows:

> "'So, it will be seen from the foregoing authorities, that it has been the uniform rule in this state for the trial courts to entertain jurisdiction to direct the payment of maintenance and support for a wife and minor children, when for good reason she is living separate and apart from the husband. * * * *The fact that decree of divorce has been denied does not oust the court of jurisdiction to make appropriate orders for the custody, care and welfare of the minor children and the maintenance of the children and wife.'* (Emphasis added.)"

and then said:

> "A suit for divorce under our system is a suit in equity. A divorce court in the exercise of its general equitable powers may grant such incidental relief as the evidence warrants when it has both parties before it. Where, as here, the wife resists a divorce suit of the husband, and the divorce is denied, the court, as an incident to the full disposition of the matter before it, can award separate maintenance for the wife and children or for the wife alone if there be

no children, for such time as the parties live separate and apart, particularly when it appears from the evidence that the parties are not living together and such fact is not the fault of the wife, and the wife or family is in need of such maintenance and the husband has the ability to provide the same. In such a case it is not necessary that the wife file a cross-suit for separate maintenance." 68 Idaho at 280, 281, 193 P.2d at 394.

In 141 A.L.R. 399, at 403, where the Idaho cases are collected, referring to jurisdiction of equity courts to grant separate maintenance, the annotator said:

> "The jurisdiction of the chancery courts to grant in a proper case separate maintenance or alimony without divorce (where no divorce was asked, or where, divorce being asked, the proof did not justify it, but did justify a separate maintenance) was also sustained or recognized without much elaboration in the following cases in which the question was expressly raised:"

■ In this case plaintiff cannot be said to have condoned defendant's treatment of her merely because she chose to endure it for a number of years until its cumulative effects drove her to seek a divorce. I.C. § 32–614. Neither is the limitation provided by I.C. §§ 32–611(4) and 32–615(3) applicable in such case. Here the offensive conduct continued up to the time of the separation of these parties, and even after the complaint was filed, according to plaintiff's testimony.

■ Defendant did not discontinue, or testify that he had discontinued, his offensive course of conduct at any time prior to the commencement of the action. Neither did defendant contend nor testify that plaintiff was guilty of cruelty toward him. Thus, ground for a judgment of separate maintenance was fully established, if it were found that the parties could not live together. Hiltbrand v. Hiltbrand, supra; 10 A.L.R.2d 466, Anno.—Civil Suit for Support—Defenses.

In this case it is not appropriate to say that plaintiff could later file an action for separate maintenance, in case she cannot be reconciled to her marriage relationship with defendant. Such an action would involve additional costs and counsel fees which these parties cannot afford.

" 'Equity having obtained jurisdiction of subject matter of a dispute, will retain it for the settlement of all controversy between the parties with respect thereto.' Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080, 1083, and cases there cited. It is also the rule in this state (except in default cases) that the court will grant all proper relief consistent with the case, made and embraced within the issues, whether the particular relief be prayed for or not. Sec. 10–704 I.C.; [Citations]." Anderson v. Whipple, 71 Idaho 112, 122, 227 P.2d 351 (1951).

Gem-Valley Ranches, Inc. v. Small, 90 Idaho 354, 411 P.2d 943 (1966); Jones v. State, 85 Idaho 135, 376 P.2d 361, 3 A.L.R.3d 1158 (1962); McGhee v. McGhee, 82 Idaho 367, 353 P.2d 760 (1960); Fort Hall Indian Stockmen's Ass'n, Inc. v. Thorpe, 82 Idaho 458, 354 P.2d 516 (1960); Anderson v. Cummings, 81 Idaho 327, 340 P.2d 1111 (1959); Summers v. Martin, 77 Idaho 469, 295 P.2d 265 (1956); Sims v. Purcell, 74 Idaho 109, 257 P.2d 242 (1953).

This cause is remanded to the district court with directions to vacate the judgment and to hear any further or supplemental evidence the parties or either of them may offer, and make a finding as to whether these parties can be reconciled, and if not, to grant either a divorce or separate maintenance to appellant.

No costs allowed.

McFADDEN, Justice (dissenting).

I wish to express my dissent to the views expressed in the majority opinion authored by Justice Taylor, reversing the judgment of the trial court which denied appellant separate maintenance.

The minority viewpoint is based upon the principle that this court will not disturb findings of fact entered by a trial court when based on *competent*, although conflicting evidence; that the evidence before the trial court met these standards and hence the findings should not be disturbed.

The majority viewpoint recognizes the tenet that findings supported by competent evidence will not be disturbed by this court, but determines that the record reflects the plaintiff "did establish sufficient grounds for separate maintenance." The opinion of the court remands the case with instructions to vacate the judgment "and to hear any further or supplemental evidence the parties or either of them may offer, and make a finding as to whether these parties can be reconciled, and if not, to grant either *a divorce* or *separate maintenance* to appellant." (Emphasis added.)

The issues presented by the pleadings were fully developed by each of the parties in the trial to the court on September 28 and 29, 1966. The issues before that court were as to the grounds for divorce, and also as to the financial needs of the parties for the support of the plaintiff and the minor children. The trial court had before it the testimony of the parties to this action, and no other testimony. Over two months after the case was fully presented, the court ordered the case reopened for further evidence with reference "to custody of the children and plaintiff's grounds for divorce," as well as to other facts that should be developed. Further testimony was submitted to the court in December 1966. At the close of the testimony on September 29, 1966, the trial court advised the parties that it was considering the case not only as one for divorce, but also as one for separate maintenance.

To me it is clear that the trial court in entering its findings of fact weighed the evidence presented by the plaintiff and by the defendant in light of the law pertaining to divorce and separate maintenance, and was exercising judicial discretion within the ambit of its authority in enter-

ing the finding of fact which states: "The plaintiff failed to sustain the burden of proving by a preponderance of the evidence her allegations of cruelty on the part of the defendant or sufficient grounds for separate maintenance."

This court, on several occasions, has discussed the *authority* of the trial court to enter a decree of separate maintenance when a divorce has been denied. The first of these cases is that of Simonton v. Simonton, 33 Idaho 255, 193 P. 386 (1920), which was an action to compel an accounting by an administratrix and to have a claim based on a judgment for separate maintenance allowed. Therein the court was faced with the sufficiency of a complaint attacked by demurrer and held the complaint sufficient. In the course of the opinion, this court stated:

"While there are conflicting decisions upon this point, the weight of authority holds that courts of equity have inherent jurisdiction to award separate maintenance for the support of the wife and minor children independent of any action for divorce and independent of any statutory provision. * * * In this state a suit for separate maintenance may be maintained by a wife, based on C.S., sec. 4654. [I.C. § 32–901]." 33 Idaho at 262, 193 P. at 388.

Vollmer v. Vollmer, 47 Idaho 135, 273 P. 1 (1928) was an action for divorce by the husband, with the wife interposing an affirmative defense of non-support and prayer she be allowed separate maintenance. The trial court denied the husband the divorce but entered a decree of separate maintenance for the wife, which this court approved.

In Sauvageau v. Sauvageau, 59 Idaho 190, 81 P.2d 731 (1938), the wife sought a divorce with an award for custody of the minor child and maintenance. The trial court denied the divorce on the grounds of lack of residence but awarded separate maintenance. This court affirmed the trial court. In Radermacher v. Radermacher, 59 Idaho 716, 87 P.2d 461 (1938), the husband brought an action for divorce, and the wife asked for separate maintenance. The divorce was denied, but the court ordered payment of separate maintenance. This court affirmed the award of the separate maintenance, but reversed as to award of property. In Hiltbrand v. Hiltbrand, 68 Idaho 275, 193 P.2d 391 (1948), the husband sought a divorce, and the wife cross-complained for separate maintenance. The trial court denied the divorce, but granted separate maintenance to the wife. This court affirmed the award. In Parsons v. Parsons, 72 Idaho 455, 243 P.2d 973 (1952), the husband sought a divorce and the wife cross-complained for separate maintenance. The trial court granted the divorce, which this court reversed, and remanded to the trial court for trial on the issues of the cross-complaint.

There has been no case brought to my attention wherein this court has, after trial of a divorce action which was denied, recognized there was no error in the court's denial of the divorce, then remanded the cause for further proceedings to determine if in the future the parties can be reconciled. The prior cases of this court dealing with separate maintenance in each instance discussed the authority of the trial court to act, and have recognized the authority of the trial court in that regard. This case is unique in that the trial court considered the issue of separate maintenance and in the application of its judicial discretion denied not only the divorce, but also found no grounds for separate maintenance. It is my conclusion this finding is binding on this court, and there is no showing of such abuse of discretion by the trial court as to justify reversing the case.

SPEAR, J., concurs.