2005 ND 47

**Danni Jane SWEENEY, n/k/a Danni Jane Lynch, Plaintiff and Appellee**

v.

**David James SWEENEY, Defendant and Appellant.**

No. 20040142.

Supreme Court of North Dakota.

March 4, 2005.

Rehearing Denied April 6, 2005.

Irvin B. Nodland, P.C., Bismarck, N.D., for plaintiff and appellee.

Charles L. Neff, Neff, Eiken & Neff, P.C., Williston, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] David Sweeney appealed from a district court judgment, entered upon remand by this Court, denying his request for litigation costs and attorney fees. We hold the trial court abused its discretion in denying Sweeney's request for costs and attorney fees, under N.D.C.C. § 14-09-24, against Danni (Sweeney) Lynch for her willful and persistent denial of Sweeney's visitation rights with their child. We reverse and remand for entry of an award of reasonable costs and attorney fees to

David Sweeney under N.D.C.C. § 14-09-24.

I

[¶ 2] The parties were married in Minnesota in 1989, and there is only one child from their marriage. In 1990, Lynch filed for divorce in Minnesota and moved permanently with the child to North Dakota. The original Minnesota divorce decree, entered in 1991, granted custody of the child to Lynch with reasonable visitation for Sweeney. Because of difficulties in exercising visitation under the original decree, the parties participated in mediation, and Sweeney subsequently moved the Minnesota court to enforce his visitation rights. In 1994, the Minnesota court entered a Second Amended Judgment that contained a detailed visitation schedule. That Minnesota judgment was filed as a foreign judgment in this state to allow enforcement in Williston, where Lynch and the child were living.

[¶ 3] In 1997, a guardian ad litem was appointed for the child to facilitate and supervise visitation and to advise whether unsupervised visitations would be appropriate. After meeting with the child and supervising a few visits, the guardian ad litem withdrew, citing interference and non-cooperation by Lynch and her family and friends.

[¶ 4] The trial court held evidentiary hearings in September 1998 and August 2000. Lynch sought restrictions on Sweeney's visitation with the child. Sweeney sought a change of custody and an award of costs and attorney fees on the basis of Lynch's willful and persistent interference with visitation and her unsubstantiated allegations of abuse by Sweeney against the child.

[¶ 5] The trial court decided Lynch should retain custody, but the court specifically noted that this was Lynch's final

opportunity to recognize and facilitate Sweeney's visitation rights. The parties filed cross appeals. This Court affirmed the denial of the motion to change custody, but reversed and remanded for additional findings and a redetermination of Sweeney's request for costs and attorney fees:

> [U]nder N.D.C.C. § 14–09–06.5, a trial court must award reasonable attorney's fees and court costs if it finds that an allegation of harm to the child is false and was not made in good faith. Under N.D.C.C. § 14–09–24, a trial court must award reasonable attorney's fees and costs if it finds there has been willful and persistent denial of visitation rights by the custodial parent.
>
> . . . .
>
> If the triggering factors in the statutes are present, the court must award costs and reasonable attorney's fees. The court failed to make findings on the triggering factors, but awarded partial costs as a sanction, taking into consideration Danni's ability to pay. It is unclear from these findings and conclusions whether the court correctly applied the appropriate legal standards in determining whether to award costs and attorney's fees under the statutes. Accordingly, we reverse the denial of attorney's fees and the award of costs and remand for the trial court to make more explicit findings and to award reasonable attorney's fees and costs in accordance with the statute if the triggering factors are present.

*Sweeney v. Sweeney*, 2002 ND 206, ¶¶ 18, 21, 654 N.W.2d 407. Upon remand the trial court determined the triggering factors had not been met and again refused to award attorney fees under either statute.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 7] On appeal, Sweeney asserts the trial court erred in refusing to award him attorney fees against Lynch under N.D.C.C. §§ 14–09–06.5 and 14–09–24. On appeal, this Court will not overturn a trial court's decision regarding attorney fees unless the appellant affirmatively establishes the trial court abused its discretion. *See Hendrickson v. Hendrickson*, 1999 ND 37, ¶ 14, 590 N.W.2d 220. The court's underlying findings of fact will be upheld unless clearly erroneous under N.D.R.Civ.P. 52(a). *In re Estate of Gleeson*, 2002 ND 211, ¶ 21, 655 N.W.2d 69.

## A

[¶ 8] Section 14–09–06.5, N.D.C.C., provides:

> Allegation of harm to child—Effect. If the court finds that an allegation of harm to a child by one parent against the other is false and not made in good faith, the court shall order the parent making the false allegation to pay court costs and reasonable attorney's fees incurred by the other parent in responding to the allegation.

Under this statute, when the court finds a parent has made allegations that the other parent has caused harm to a child and those allegations were not made in good faith, the court must order the parent making the false allegations to pay court costs and reasonable attorney fees incurred by the other parent in responding to the allegations. *Sweeney*, 2002 ND 206, ¶ 18, 654 N.W.2d 407.

[¶ 9] On March 28, 2001, the trial court made the following findings relevant to this issue:

As to these new allegations raised by Danni with this Court that David may have sexually abused [the child], the evidence presented by Danni was that one time David and [the child] took a shower together where during said shower, [the child] did out of curiosity touch David's penis, which event was recounted by David to Danni. The Court finds that such event does not establish any sexual abuse by David of [the child], and accordingly, this Court finds David has not at any time committed any sexual abuse involving [the child].

. . . .

Danni was the person who made allegations ... that David had engaged in sexually inappropriate conduct and mental harm involving [the child], all of which did contribute to the increased expenses and protracted nature of this litigation.

[¶ 10] In its order upon remand, the trial court made the following finding relevant to this issue:

[A] review of the voluminous files do not set forth significant reference to allegations of harm to [the child] by David Sweeney. To this Court, that question was and is a non-issue. Notwithstanding some general reference by the Court in prior orders to the contrary, I specifically find that no "allegation of harm to the child by one parent against the other" was made as contemplated by NDCC 14–09–06.5.

[¶ 11] Lynch alleged Sweeney harmed their child by allowing the young boy to touch his father's privates while the two of them were taking a shower together. The court found the conduct did occur but did not constitute sexual abuse or harm to the child. In making its subsequent finding that there was no trigger for the award of costs and attorney fees under N.D.C.C. § 14–09–06.5, the court implicitly found that the allegation was made in good faith. Under N.D.R.Civ.P. 52(a), this Court will not reverse a trial court's finding of fact unless it is clearly erroneous. *Hogan v. Hogan*, 2003 ND 105, ¶ 6, 665 N.W.2d 672. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the evidence, this Court has a definite and firm conviction a mistake has been made. *Id.* Because an incident of sexual nature did occur, we conclude the trial court's finding that Lynch's allegation of abuse was made in good faith is not clearly erroneous. We further conclude, therefore, the trial court did not abuse its discretion in refusing to award attorney fees under N.D.C.C. § 14–09–06.5.

B

[¶ 12] Section 14–09–24, N.D.C.C., provides:

Interference with visitation—Attorney's fees—Enforcement remedies and tools. In any proceeding in which child visitation is properly in dispute between the parents of a child, the court shall award the noncustodial parent reasonable attorney's fees and costs if the court determines there has been willful and persistent denial of visitation rights by the custodial parent with respect to the child. The court may use any remedy that is available to enforce a child support order and which is appropriate to enforce visitation.

Under this statute, the trial court must award reasonable attorney fees and costs to the noncustodial parent if it determines there has been willful and persistent denial of visitation rights by the custodial parent. *Sweeney*, 2002 ND 206, ¶ 18, 654 N.W.2d 407.

[¶ 13] On March 28, 2001, the trial court made the following findings relevant to this issue:

This Court finds that since the birth of the child, the mother, Danni, has engaged in a continued course of conduct which minimized, limited, and obstructed David's relationship with [the child]. Such conduct included failing to allow David reasonable access to the child; failure to follow the visitation orders of the Minnesota court; and failing to implement visitation orders of this Court.

Although Danni justifies her actions based on perceived danger to the child from the father, there have been no facts presented which could serve as a basis for fear of danger.

. . . .

When visitations between David and [the child] did occur, Danni often intruded directly or indirectly with phone calls, observers present, or other devices which may have conveyed the impression to [the child] that the visits were dangerous, or displeasing to Danni. The child's current attitude towards the father is consistent with a successful conveyance of that message.

. . . .

[A]lthough it appears that significant grounds exist for a change of custody, I decline changing custody at this time in order to allow Danni a final opportunity to fulfill her obligations under the law as a custodial parent which require her to recognize, facilitate, and enforce, rather than obstruct, the visitation rights held by David with the child.

[¶ 14] Notwithstanding those prior findings, the trial court, upon remand by this Court, denied Sweeney's request for costs and attorney fees under N.D.C.C. § 14–09–24, stating: "the Court at this time does not find that the triggering provisions of NDCC 14–09–24 have been shown." The court explained the rationale underlying its decision to not award Sweeney costs or attorney fees:

Trial courts do not exist in vacuums. They are aware of the consequences of their decisions, whether a decision will result in fixing a situation or making it worse.

This Court is aware that the current remedy in place has had the desired result. Visitation is occurring; the child is getting a reasonable opportunity to benefit from contact with both parents, each of whom has significant positives to offer. The hard feelings between the parties have been pushed aside by each parent sufficiently to allow the desired and required result. The addition of a significant burden to one party or the other at this stage of the relationship would tend to exacerbate an already delicate situation.

Trial courts often must balance the effects of the decision. Although we are not free to ignore the law, we are entitled to make factual findings which are consistent with making a situation work.

[¶ 15] Section 14–09–24, N.D.C.C., mandates that the court award reasonable attorney fees and costs when there has been "willful and persistent denial of visitation rights" by a custodial parent. Despite its previous findings that Lynch had pursued a "continued course of conduct which minimized, limited, and obstructed" Sweeney's relationship with the child, the court refused to comply with the statute's mandate to award Sweeney costs and attorney fees. The court's explanation for refusing to award attorney fees under this statute is not that the triggering factors of willful and persistent denial of visitation had not occurred, but rather that the parties' relationship had improved and the court did not want to jeopardize the

situation by imposing "a significant burden" on Lynch. The court's statement that it is "entitled to make factual findings which are consistent with making a situation work" demonstrates that the trial court was working backwards to reach a result and was using its factual findings to get there. By doing so, the court misapplied the statute and ignored its mandate to award reasonable costs and attorney fees when willful and persistent denial of visitation has occurred. The court's explanation for its decision quite clearly shows the court believed that if it followed the law and awarded costs and attorney fees to Sweeney, the parties might not continue to cooperate and their relationship as the child's parents could further deteriorate. When the language of a statute is clear, the court cannot ignore that language under the pretext of pursuing its spirit or for objectives other than adhering to the legislative intent as expressed by the law's unambiguous terms. N.D.C.C. § 1–02–05; *Shiek v. North Dakota Workers Comp. Bureau,* 2002 ND 85, ¶ 12, 643 N.W.2d 721. While the trial court may have had good intentions, it cannot ignore the law out of fear that one or both parties might respond unfavorably or act inappropriately as a result of the court's proper decision in awarding costs and attorney fees under the statute. *See Aaron v. Cooper,* 257 F.2d 33, 38 (8th Cir.), *aff'd,* 358 U.S. 1, 78 S.Ct. 1399, 1401, 3 L.Ed.2d 5, 19 (1958) (a person may not be denied enforcement of rights to which he is entitled because of action taken or threatened in defiance of such rights); *Orleans Parish Sch. Bd. v. Bush,* 242 F.2d 156 (5th Cir.1957) (the fact that a school might be closed if the court enforces desegregation requirements is no reason for not enforcing the law); *Allen v. County Sch. Bd. of Prince Edward Co., Va.,* 249 F.2d 462, 465 (4th Cir.1957). It is the duty of the court to follow the law as it is written in all cases under all circumstances, without fear and without regard to public clamor or personal consequences. *Ex parte Ruef,* 8 Cal.App. 468, 97 P. 89, 90 (1908).

[¶ 16] A trial court cannot enter findings so as to "tie the reviewing court's hands." *Bergstrom v. Bergstrom,* 296 N.W.2d 490, 494 (N.D.1980). Although the trial court made a conclusory finding that the triggering provisions of N.D.C.C. § 14–09–24 had not been met, the court's prior specific findings that there had been continued interference with visitation and its subsequent explanation that it was attempting to avoid upsetting a "delicate situation" severely discredits the court's conclusory finding that the triggers were not met.

[¶ 17] After reviewing the record and the trial court's explanation for its decision upon remand, we are left with a firm and definite conviction that the court's finding the triggers were not met for an award of costs and attorney fees under N.D.C.C. § 14–09–24 was induced by an erroneous view of the law and is clearly erroneous. We therefore conclude the trial court abused its discretion in denying Sweeney's request for costs and attorney fees under N.D.C.C. § 14–09–24.

### III

[¶ 18] We hold the trial court did not abuse its discretion in denying Sweeney's request for costs and attorney fees under N.D.C.C. § 14–09–06.5. We further hold, however, that the trial court abused its discretion in refusing to award costs and attorney fees under N.D.C.C. § 14–09–24, and we reverse and remand with directions the court award reasonable costs and attorney fees to David Sweeney under that statute.

[¶ 19] WILLIAM A. NEUMANN, JJ., concurs.

VANDE WALLE, Chief Justice, concurring.

[¶ 20] The award of attorney fees in a divorce action has long been held by this Court to be a matter for the discretion of the trial court. *Mosher v. Mosher*, 16 N.D. 269, 113 N.W. 99 (1907); N.D.C.C. § 14–05–23. It is a discretion I believe this Court, as an appellate court, ought to give free rein. Even when attorney fees are sought for an appeal to this Court, we have stated that although we have concurrent jurisdiction with the trial court to award attorney fees on appeal, the trial court is in the better position to rule on the motion for attorney fees. *E.g., Heller v. Heller*, 367 N.W.2d 179 (N.D.1985).

[¶ 21] However, in the case of interference with visitation, the Legislature has deemed the issue to be so serious that the discretion of the trial court to award attorney fees has been curbed and, where there is willful and persistent denial of visitation rights by the custodial parent, the Legislature requires the trial judge to award reasonable attorney fees and costs. N.D.C.C. § 14–09–24. Ordinarily, the principal standards for an award of attorney fees are the need of one party and the ability to pay of the other party, *e.g., Pozarnsky v. Pozarnsky*, 494 N.W.2d 148 (N.D.1992), but under the statute, even that standard is not applicable where one party interferes with the visitation of the other party.

[¶ 22] Here, I agree with the majority opinion that there was interference with visitation such as to require the award of attorney fees under N.D.C.C. § 14–09–24. It seems apparent the trial court does not wish to further alienate the parties by an award of attorney fees but is rather interested in building a positive relationship to the benefit of the child. But the statute does not allow for the exercise of such discretion either by the trial court or this Court on appeal. I regret we did not conclude that when this matter was before us in *Sweeney v. Sweeney*, 2002 ND 206, 654 N.W.2d 407. However, there the request for attorney fees was not only for interference with visitation but also for making bad faith, false accusations of harm to a child, under N.D.C.C. § 14–09–06.5. We could not clearly understand the trial court's factual determinations and remanded for clarification. The majority now affirms the trial court's findings that the accusations were not made in bad faith and awards no attorney fees under that section. I believe we have no choice but to order an award of attorney fees under N.D.C.C. § 14–09–24.

[¶ 23] I concur in the majority opinion.

[¶ 24] GERALD W. VANDE WALLE, C.J.

KAPSNER, Justice, concurring in the result.

[¶ 25] I concur in the result. I write separately because I fear the reasoning of the majority opinion suggests more than is necessary by its reliance on school desegregation and bail cases in paragraph 15.

[¶ 26] Section 14–09–24, N.D.C.C., is a statutory directive that imposes consequences in the form of attorney fees and costs on a custodial parent who willfully and persistently interferes with visitation rights of the noncustodial parent. I believe the majority opinion properly applies the statutory directive to the facts of this case. However, it is only a statutory directive and it is one the legislature could change tomorrow if the legislature felt that the purposes sought to be served were not well served by its continuing existence. Therefore, I do not join in any implication that the claim of noncustodial parents to get attorney fees and costs under N.D.C.C. § 14–09–24 rises to the level of the constitutional rights asserted in the federal

cases or the California case cited in paragraph 15 of the majority opinion.

[¶ 27] The requirement to impose attorney fees and costs is clearly directed in the statute.

> The interpretation of a statute is a question of law for the court to decide. In construing statutes, our duty is to ascertain the Legislature's intent. The Legislature's intent initially must be sought from the language of the statute as a whole. We construe words in a statute in their plain, ordinary, and commonly understood sense. If the statutory language is clear and unambiguous, we do not disregard that language under the pretext of pursuing legislative intent, because the intent is presumed clear from the face of the statute.

*Singha v. N.D. State Board of Medical Examiners*, 1998 ND 42, ¶ 16, 574 N.W.2d 838 (internal citations omitted); N.D.C.C. § 1–02–05.

[¶ 28] MARY MUEHLEN MARING, J., concurs.

MARING, Justice, concurring in the result.

[¶ 29] I concur in the result only. The majority opinion does not fully address the requirement of a finding of both "willful" and "persistent" interference with child visitation before awarding reasonable attorney's fees and costs under N.D.C.C. § 14–09–24.

[¶ 30] Willful "is a word of many meanings, with its construction often influenced by its context." *Black's Law Dictionary* 1599 (6th ed.1990) (citation omitted). "A willful act may be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently." *Id.*

[¶ 31] In the criminal context, N.D.C.C. § 12.1–02–02(1) provides that for the purposes of Title 12.1, N.D.C.C., the Criminal Code, a person engages in conduct:

> e. "Willfully" if he engages in the conduct intentionally, knowingly, or recklessly.

N.D.C.C. § 12.1–02–02(1)(e). Also defined in that section are the following:

> a. "Intentionally" if, when he engages in the conduct, it is his purpose to do so.
>
> b. "Knowingly" if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so.
>
> c. "Recklessly" if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, except that, as provided in section 12.1–04–02, awareness of the risk is not required where its absence is due to self-induced intoxication.

N.D.C.C. § 12.1–02–02(1)(a), (b), and (c). We have said section 12.1–02–02 applies only to crimes or offenses described in Title 12.1. *State v. Goetz*, 312 N.W.2d 1, 11 (N.D.1981).

[¶ 32] In the tort context, "willful misconduct" has been defined by our Court as "knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand; and the omission of such care and diligence to avert threatened danger when to an ordinary person it must be apparent that the result likely would prove disastrous to another." *Stokka v. Cass Cty. Elec. Co-op., Inc.*, 373 N.W.2d 911, 916 (N.D.1985) (quoting *Van Ornum v. Otter Tail Power Co.*, 210 N.W.2d 188, 202 (N.D.1973)).

[¶ 33] An employee may be held liable in the employee's personal capacity for acts or omissions of the employee which constitute "reckless or grossly negligent conduct, or willful or wanton misconduct" under N.D.C.C. § 32–12.1–04(3). We have held, in this context, that "[w]illful and wanton actions are '[r]eckless, heedless, malicious; characterized by extreme recklessness or foolhardiness; recklessly disregardful of the rights or safety of others or of consequences.'" *Nelson v. Gillette*, 1997 ND 205, ¶ 27, 571 N.W.2d 332 (quoting *Black's Law Dictionary* 1582 (6th ed.1990)).

[¶ 34] In cases such as the one at bar, which requests a change of custody based on the custodial parent's "willful and persistent" denial or interference with the noncustodial parent's visitation rights, we have affirmed a trial court's decision to modify custody where there is evidence of egregious violations of specific court ordered visitation, evidence of an intransigent attitude against visitation rights, and alienating behavior by the custodial parent. *See Anderson v. Resler*, 2000 ND 183, 618 N.W.2d 480; and *Hendrickson v. Hendrickson*, 2000 ND 1, 603 N.W.2d 896. We have emphasized that frustration of visitation alone does not constitute a sufficient change in circumstances to warrant modification of custody. *Sweeney v. Sweeney*, 2002 ND 206, ¶ 11, 654 N.W.2d 407. We have held that there must be a finding that the efforts to frustrate visitation had worked against the best interest of the child. *Id.* Therefore, in the context of "willful and persistent" denial or interference with visitation in a change of custody proceeding, we have considered a custodial parent's intentions and motives for interfering with visitation.

[¶ 35] The American Law Institute, in *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 2.19 (2002), recognizes that if a court finds a parent intentionally and "without good cause" interfered persistently with the other parent's access to the child, the court should order an appropriate remedy, which may include an award of court costs and reasonable attorney's fees. "Good cause is established when a parent reasonably thinks his or her actions or failures to act are necessary to protect the child or the parent, or when compliance is simply impossible." *Id.* at cmt. e. "A parent may act in good faith even if the concern giving rise to the action turns out to be unfounded, as long as the action was reasonable at the time it was taken in light of the parent's available information." *Id.* See also A.L.I., *Principals of the Law of Family Dissolution: Analysis and Recommendations* § 2.11 (2002) (providing a "good-faith exception" to the imposition of limiting visitation provisions for a parent who interferes with access to the child).

[¶ 36] In the present case, the trial court found in its March 28, 2001, findings of fact, conclusions of law, and order for judgment that there was no sexual abuse by the father of his son. It also found that although the mother justified her actions based on a perceived danger to the child from the father, no facts were presented that could serve as a basis for danger to the child from the father. Finally, the trial court found:

The Court has made several findings recounting how [the mother] has persistently interfered with the visitations of father and child since the child's birth. It is not clear to the Court whether such actions are based upon an intentional plan of interference, or whether such activities relate to a degree of selfishness and/or overprotectiveness.

In summary, the trial court found the conduct alleged had occurred, but that it was not abuse and the father was not a danger

to his son. On remand, it further found that, because the incident of allowing the young son to touch his father's private parts did occur, the mother's allegation of sexual abuse was made in good faith.

[¶ 37] I would recognize a good-faith defense to an award of costs and attorney's fees when a parent fails to make a child accessible for visitation in order to protect the child from sexual or physical abuse by the other parent or when the action is taken in the good-faith belief that it is necessary for the child's safety. I do believe, however, that a parent relying on a good cause defense must initiate legal proceedings as quickly as reasonably possible to have a court adjudicate whether the parent's actions are justified. An interfering parent cannot continue to take self-help measures in these circumstances beyond what is reasonably necessary to protect the child.

[¶ 38] I concur in the result of this case, because even if some of the mother's actions were based on a good-faith belief that she needed to protect the safety of her child, there is evidence of other acts that amount to obstruction of visitation without good motive. I would, however, instruct the trial court on remand to award reasonable attorney's fees and costs only for those actions which were both willful and persistent and not for those which the trial court finds were done in good faith to protect her child.

[¶ 39] MARY MUEHLEN MARING