2005 ND 71

**H–T ENTERPRISES, Plaintiff and Appellee**

v.

**ANTELOPE CREEK BISON RANCH, comprised of Douglas G. Candee and Keith Candee, Defendant and Appellant.**

**No. 20040194.**

Supreme Court of North Dakota.

April 6, 2005.

Rehearing Denied April 26, 2005.

Michael J. Maus, Hardy, Maus & Nordsven, P.C., Dickinson, N.D., for plaintiff and appellee.

Suzanne M. Schweigert (argued), Smith Bakke Oppegard Porsborg Wolf, Bismarck, N.D., and David D. Beaudoin (on brief), Omaha, NE, for defendant and appellant.

VANDE WALLE, Chief Justice.

¶1 Antelope Creek Bison Ranch ("ACBR"), comprised of Douglas G. Candee and Keith Candee, appealed an amended judgment and three orders entered in an eviction action brought by H–T Enterprises ("H–T"). We affirm.

I

¶2 On January 3, 2000, ACBR leased from H–T about 7,400 acres for a bison ranch for a term beginning January 1, 2000, and terminating December 31, 2004. The lease provided, in part:

3. *LEASE PAYMENTS:* Lessee shall pay annual rent for the property in the amount of $45,000.00 to be paid as follows:

a. One-half due on or before January 1st of each year of this lease including payment on or before January 25, 2000.

b. The remaining of the annual rent is to be paid on or before November 25, 2000.

. . . .

5. *FENCING:* Lessee agrees to assume all cost associated with installation of the necessary fencing to complete the use of the entire property for buffalo. H–T Enterprises would agree to provide fencing materials. After initial installation of the fence, maintenance of the fence would be the responsibility of the Lessee.

. . . .

12. *RESEEDING:* Costs above any government share shall be the responsibility of Lessee. Total crop can be used by the Lessee provided such usage is consistent with good farming/ranching practices.

13. *ACCESS TO PROPERTY BY LESSOR:* The Lessor herewith retains the right of access to the above described premises at reasonable times to inspect the premises and otherwise perform whatever acts the Lessor may deem necessary.

14. *POSSESSION AND DEFAULT:* The Lessee shall be entitled to possession upon execution of this agreement and subject to the terms of this lease. In the event that the Lessee should default in the performance of any of the terms, covenants and/or conditions of this lease, Lessor may, in addition to every remedy now or hereafter available to the Lessor in law or equity, have the following rights and remedies as set forth and such shall be deemed cumulative and not exclusive. Lessor shall have the right to re-enter the premises without affecting thereby the termination of lease by giving Lessee notice of such intention. Lessor may terminate the lease or elect to relet the premises.

15. *WAIVER:* Waiver of any breach of any of the provisions of this lease by the Lessor shall not constitute a continuing waiver or a waiver of any subsequent breach by Lessee.

16. *TIME OF THE ESSENCE:* If it further agreed that time is of the essence of this agreement and specific times mentioned herein shall be strictly adhered to.

. . . .

18. *LAND LEASE:* The premises is leased to the Lessee for the purposes of using the above described premises as pasture land, seed grain production, forage (hay) production, and crop raising.

No pasture land shall be broken up or seeded absent consent by Lessor.

¶ 3 On December 6, 2002, H–T notified ACBR to quit and vacate the leased premises. On January 16, 2003, H–T commenced an eviction action against ACBR. The complaint alleged, among other things, that "annual rent payment was in the amount of $45,000 with the first half to be due and payable on January 1st of each year and the remainder to be paid on or before November 25th of each year," ACBR "did not make the November 25th payment for the year 2002," and ACBR "has over grazed the premises and, thus, has committed waste." The complaint sought possession of the premises and "rental due as of December 6, 2002, for $19,602.72 together with the accruing daily rental in the amount of $123.28." ACBR answered, denying nonpayment of rent and waste, and counterclaimed, alleging H–T's constructive eviction of ACBR "has denied [ACBR] the ability to recoup its capital expenditures which constituted permanent improvements to the leased property in a value to be proven, but in amounts in excess of $25,000." ACBR sought a judgment that H–T "take nothing by its Complaint" and "a determination that no rental monies are due and for a further determination that [H–T's] actions ha[ve] resulted in constructive and actual breaches and eviction from the leased premises."

¶ 4 After a hearing on January 28, 2003, the district court found ACBR "did not pay its rent payment due November 25, 2002, in the amount of $22,500," concluded ACBR was in default, the lease was terminated, H–T was entitled to eviction, and entitled to a judgment for unpaid rent. The court ordered the money judgment stayed for 60 days to allow ACBR to pursue its "claim for offset through improvements to the leased property." Judgment was entered accordingly on February 4, 2003.

¶ 5 ACBR filed a motion for offsets. After a hearing, the district court issued an order denying ACBR's claims for offsets and issued an order for entry of an amended judgment. On May 13, 2004, an amended judgment was entered that evicted ACBR and awarded H–T judgment against ACBR for:

> $22,500.00 for rent through December 31, 2002, and $123.29 per day from January 1, 2003, through February 10, 2003, in the amount of $4,685.02 for a total of $27,185.02 ` and for costs and disbursements ... of $110.00 with interest at 12% from and after February 4, 2003.

ACBR moved for reconsideration, which the district court denied.

ACBR has raised the following issues on appeal:

I. Whether the District Court erred in summarily evicting Antelope Creek Bison Ranch and its livestock from H–T's premises for failing to pay rent when due?

II. Whether the District Court erred in calculating the rent owing to H–T?

III. Whether the District Court erred in failing to award Antelope Creek Bison Ranch its claim for offsets for the improvements made to the lease property and H–T's breach of the Lease?

II

¶ 6 Under N.D.C.C. § 33–06–01, an eviction action may be brought to recover the possession of real estate if, among other things, a lessee fails to pay rent for three days after it is due or violates a material term of a written lease. Section 33–06–04, N.D.C.C., provides, in part:

An action of eviction cannot be brought in a district court in connection with any other action, except for rents and profits accrued or for damages arising by reason of the defendant's possession. No counterclaim can be interposed in such action, except as a setoff to a demand made for damages or for rents and profits.

"An eviction action under N.D.C.C. ch. 33–06, is a summary proceeding to recover possession of real estate." *Anderson v. Heinze*, 2002 ND 60, ¶ 11, 643 N.W.2d 24. The purpose of the no-counterclaim provision in N.D.C.C. § 33–06–04 is to get a speedy determination of possession. *VND, LLC v. Leevers Foods, Inc.*, 2003 ND 198, ¶ 11, 672 N.W.2d 445. A defendant may show the character of the parties' possessory rights, evidence of a strained relationship having a bearing on whether a material breach has occurred, and affirmative defenses. *Id.* at ¶¶ 12, 13. An action for eviction invokes a court's equitable jurisdiction. *In re Estate of Binder*, 366 N.W.2d 454, 456 (N.D.1985). Payment or nonpayment of a sum of money is a question of fact. *First Interstate Bank of Fargo, N.A. v. Rebarchek*, 511 N.W.2d 235, 243 (N.D.1994). Whether or not a certain state of facts is contrary to equity is a conclusion of law. *Midland Diesel Serv. & Engine Co. v. Sivertson*, 307 N.W.2d 555, 557 (N.D.1981). We will not reverse a trial court's finding of fact unless it is clearly erroneous. *Sweeney v. Sweeney*, 2005 ND 47, ¶ 11, 693 N.W.2d 29. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the evidence, this Court has a definite and firm conviction a mistake has been made." *Id.* A trial court's conclusions of law are fully reviewable on appeal. *Fladeland v. Gudbranson*, 2004 ND 118, ¶ 7, 681 N.W.2d 431.

### A

■ ¶ 7 ACBR contends the court erred in summarily evicting it and its livestock from H–T's premises for failing to pay rent, arguing the failure to pay rent was not sufficient to compel eviction, H–T waived its right to allege breach of contract by accepting late rental payments in the past, and the lease was ambiguous about the due date for rent payments. At the initial hearing, Douglas Candee told the court:

> I guess that the relief that I would lay on the table, and maybe it's in the paperwork here, is that if we can walk away from each other now at this point, I not putting anymore rent into the place for this last half of the year in exchange for the amounts of capital improvements that I have not billed for and that I won't be able to recover on the place. That would be my request or asking of the court.

Candee told the district court he did not object to termination of the lease. Furthermore, the provisions of the lease quoted above belie ACBR's contentions under the practice of the parties. We conclude the court's finding of nonpayment of rent is not clearly erroneous and we conclude the court did not err in evicting ACBR from the leased premises.

### B

■ ¶ 8 ACBR contends the court erred in calculating the amount of rent owing H–T, because almost all of the animals were removed in December 2002, with only a few bulls remaining in a small area of the ranch until February 7, 2003, and "equity would dictate that ACBR could not be charged for the full rental rate of $123.29 per day, until the final bull was removed." From the arguments presented, we are not persuaded the district court's award of the daily rental value of the ranch until all the

animals were removed is either clearly erroneous or inequitable.

### C

¶ 9 ACBR contends the district court erred in failing to award ACBR its claim for offsets under N.D.C.C. § 33–06–04 for the improvements it made to the leased property in the form of fencing, dams, dikes, access roads, and fertilizer application; for H–T's breach of the lease; and for the value, or return, of hay left on the premises.

#### i

¶ 10 For the proposition that it is entitled to an offset in the amount of its expenses in improving the leased property because its enjoyment of the improvements has been cut prematurely by two years with the termination of the lease, ACBR relies upon *Miami Dade Ind. Park, Inc. v. Miami Dyeing & Printing, Inc.* (*In re Miami Dyeing & Printing, Inc.*), 14 B.R. 947 (Bankr.S.D.Fla.1981), and *Ehrman v. Feist*, 1997 ND 180, 568 N.W.2d 747. Reliance upon those decisions is misplaced, as they involved leases giving the lessees options to purchase the leasehold properties they made improvements to during the lease. ACBR has not drawn our attention to any authority holding that a tenant evicted for nonpayment of rent is entitled to an offset for the value of improvements made to leasehold property without a purchase option. Section 33–06–04, N.D.C.C., does not authorize a counterclaim as an offset that is not otherwise recognized under law. We conclude the district court did not err in denying ACBR's claim for an offset for the value of its improvements.

#### ii

¶ 11 ACBR asserts that, "in September 2001, H–T, without ACBR's permission, seeded the only 150 acres of cropland into native grasses, all to the detriment of ACBR and its livestock." ACBR contends: "H–T breached the lease agreement by seeding 150 acres of the leased land, which Antelope Creek Bison Ranch is entitled to a claim of offset for the loss of use of those acres." In denying ACBR's claim for offsets, the trial court explained: "Even if the tillage of 150 acres had been an impermissible interference with the leasehold, there is no reliable evidence which might permit damage calculation. In any event, damages would be nominal." ACBR contends "[t]he District Court had more than enough evidence in which to calculate an offset, but erroneously failed to do so."

¶ 12 At the initial hearing, H–T's president said that what H–T seeded in 2001 was "under the Equip Contract with the government that we have to reseed back to grass in order to keep the payment." At the hearing on ACBR's claim for offsets, Douglas Candee testified about the 150 acres H–T seeded in 2001: "Under the contract it was anticipated that H–T would want to convert that back to hay land … I think it was anticipated in the lease … I was agreeing that we would conform or do the conservation work on the equip conservation plan." Thus, at the outset of the lease, the parties contemplated that the 150 acres in question would be seeded to grass. We conclude the court did not err in denying ACBR's claimed offset.

#### iii

¶ 13 ACBR contends it is entitled to the return of 18 tons of hay it left on the leased land or an offset for its value of $1,800. The trial court denied the claim:

Lessee claims that he left eighteen ton of his hay when he removed his livestock. Lessor claims that the only hay on the leasehold is that belonging to Nancy Herauf. In the ten months since the hearing on this matter, I have pa-

tiently awaited divine inspiration to reveal to me if there is hay and to whom it might belong. Nothing has arrived that would raise my confidence level to a preponderance of the evidence and, remaining perplexed and unconvinced, I must deny that claim.

¶ 14 Douglas Candee testified the hay left at the termination of the lease "was the 2001 production off of Section 19 and I estimated that to be eighteen tons of hay," which he "would have valued it given the shortage and stuff at $1,800, $100 per ton." On cross-examination, Candee testified:

Q. Now, you understood that—as I understood, you irrigated fourteen acres of land in Section 19 that was actually owned by Nancy Herauf?

A. I believe at the time that we irrigated I was either not—we irrigated it twice, we irrigated it in the year 2000 and we irrigated in 2001, and there was no designation made that we shouldn't be irrigating it and that we couldn't expect the crop off it unless that was granted in there the first year and not the second year.

Q. Well, first of all, do you know at this point in time, Nancy Herauf owns that land, not H–T Ranch?

A. I do now.

Q. And of course your lease references to Section 19, doesn't it?

A. Pardon?

Q. Your lease, the written lease, says 250 in Section 19, so you knew you didn't lease the entire section?

A. Right, because that's other ownership in part of Section 19, I was aware of that.

Q. And so that hay that you're talking about for $1,800 is actually hay that is grown on ground owned by Nancy Herauf?

A. I'm led to believe that now after the fact, yes.

Nancy Herauf was not a party to the lease and her land was excluded from the lease. ACBR did not prove it had a right to the hay left on the leasehold or its value. We conclude the trial court did not err in denying ACBR's hay claim.

### III

¶ 15 H–T has requested attorney fees. Absent statutory or contractual authority, the American Rule assumes parties to a lawsuit bear their own attorney fees. *Danzl v. Heidinger*, 2004 ND 74, ¶ 6, 677 N.W.2d 924. H–T has not drawn our attention to any statutory or contractual authority for an attorney fee award in this case. We deny the request for attorney fees.

### IV

¶ 16 The amended judgment and orders are affirmed.

¶ 17 MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

¶ 18 The Honorable William A. Neumann, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.